143 T.C. No. 7

UNITED STATES TAX COURT

STEVEN YARI, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13925-12L. Filed September 15, 2014.

R assessed a penalty under I.R.C. sec. 6707A. R issued a notice of intent to levy to collect this penalty. P requested a collection due process hearing, challenging the collection action. While the hearing was pending Congress retroactively changed the manner in which I.R.C. sec. 6707A penalties are calculated. P requested that R recalculate the penalty using the amount of tax shown on subsequent amended returns. R decided the penalty should not be changed, and P appealed this decision. The IRS Appeals Office agreed that the penalty amount should not be changed, and R issued a notice of determination sustaining the collection action. P believes that the appropriate penalty calculation should use the actual tax due, not the tax shown on the return on which he was obliged but failed to disclose the reportable transaction. P seeks to change the penalty from the current amount assessed, $100,000, to the minimum under the statute, $5,000.

<u>Held</u>: We have jurisdiction to consider the penalty.

Held, further, the penalty is calculated by reference to the amount of tax shown on the return with respect to which the taxpayer had a disclosure obligation.

Steven R. Mather, for petitioner.

Michael W. Tan, for respondent.

OPINION

WHERRY, Judge:  This case is before us on a petition for review of a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) sustaining a notice of intent to levy with respect to a penalty assessed for the 2004 tax year.[1]  The case presents an issue of first impression as to whether section 6707A requires respondent to use the tax shown on the return giving rise to the disclosure obligation or whether respondent must use the tax as shown on subsequent, amended returns.  We hold that respondent may calculate the amount of the penalty using the tax shown on the return giving rise to the violation of the disclosure obligation.

---

[1]All section references are to the Internal Revenue Code (Code) of 1986, as amended and in effect during the relevant period, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

## Background

This case was submitted fully stipulated pursuant to Rule 122. The parties' stipulation of settled issues and stipulation of facts, with accompanying exhibits, are incorporated herein by this reference. At the time he filed his petition, petitioner resided in California.

Petitioner formed Topaz Global Holdings, LLC (Topaz Global), on December 22, 2000. Under the regulations, Topaz Global was a disregarded entity for Federal income tax purposes. See sec. 301.7701-3, Proced. & Admin. Regs. On December 23, 2002, petitioner formed Faryar, Inc., a Nevada corporation, which elected to be treated as an S corporation for Federal income tax purposes. Faryar entered into agreements with Topaz Global and other companies to provide management services. We refer to Faryar's relationship with these companies as the management fee transaction.

In 2002 petitioner opened a Roth individual retirement account (Roth IRA) with an initial contribution of $3,000. The Roth IRA acquired all of the Faryar stock for $3,000, making the Roth IRA the sole shareholder of the S corporation.[2]

---

[2]Such a structure does not work for Federal income tax purposes because a Roth IRA generally cannot be an eligible shareholder of an S corporation. Taproot Admin. Servs., Inc. v. Commissioner, 133 T.C. 202, 215 (2009), aff'd, 679 F.3d 1109 (9th Cir. 2012).

For the 2002 through 2007 tax years Faryar reported a total net income of $1,221,778 in management fees and interest income less deductions. Because Faryar was an S corporation, this income was not taxed at the corporate level, and because the shareholder was a nontaxable entity, the income was not taxed at the shareholder level. The practical effect of this transaction was twofold: it allowed petitioner to effectively exceed the Roth IRA contribution limits and decreased the amount of income petitioner otherwise would have reported from Topaz Global because Topaz Global deducted the amounts paid to Faryar as management fees.

The Internal Revenue Service (IRS) has identified transactions such as the one petitioner engaged in as abusive Roth IRA transactions. Notice 2004-8, 2004-1 C.B. 333. The IRS has also identified these transactions as listed transactions, potentially subjecting taxpayers who did not disclose participation in these transactions on their Federal income tax returns to penalties.

Petitioner and his wife signed and apparently filed a joint 2004 Federal income tax return on October 17, 2005. This return did not disclose petitioner's participation in the Roth IRA transaction. Respondent audited petitioner's returns for 2002 and 2003 and, following his marriage in 2004, petitioner and his wife's returns for 2004 through 2007 and issued notices of deficiency to petitioner for his 2002 and 2003 tax years and to petitioner and his wife for the 2004 through 2007

tax years. In these notices respondent determined that the management fee transactions were not valid business transactions and should result in an excise tax under section 4973. With respect to the 2004 tax year respondent determined that petitioner and his wife should have included in income $482,912 from the management fee transaction. According to respondent's calculations, this inclusion, along with corresponding computational adjustments, increased petitioner and his wife's tax liability by $135,215.

Petitioner, his wife, and respondent settled these deficiency cases and entered into a closing agreement in 2011. The closing agreement required petitioner to include in his income certain amounts for each of the tax years and provided that petitioner and his wife were not liable for the section 4973 excise tax. The Court entered stipulated decisions in the deficiency cases that reflected the parties' closing agreement.

During the course of the audit petitioner determined that he had made a substantial error on his 2004 tax return because he incorrectly transferred information from a Schedule K-1, Partner's Share of Income, Deductions, Credits, etc., to that return. Petitioner and his wife prepared an amended return (first amended return) including $51 of taxable interest, $482,912 of income as determined by respondent, deductions of $1,270,448 claimed on Schedule E,

Supplemental Income and Loss, and $23,625 in itemized deductions. The first amended return resulted in a negative taxable income.

Petitioner and his wife filed a second amended return for the 2004 tax year during the pendency of the deficiency cases. This second amended return claimed a net operating loss carryback from the 2008 tax year of $2,856,026. On both amended returns petitioner and his wife reported the $482,912 from the management fee transaction as income. The stipulated decision entered by the Court for the 2004 tax year reflected the adjustments made in the first and second amended 2004 tax returns.

Respondent also assessed a section 6707A penalty of $100,000 for the 2004 tax year based on his belief that petitioner had failed to disclose his participation in a transaction identified in Notice 2004-8, supra, as a listed transaction. Respondent assessed this penalty on September 11, 2008.

Respondent sent petitioner a final notice of intent to levy on February 9, 2009. Petitioner timely requested a collection due process (CDP) hearing. During the pendency of the hearing on September 27, 2010, Congress amended section 6707A to change the method of calculating the penalty. Small Business Jobs Act of 2010 (SBJA), Pub. L. No. 111-240, sec. 2041(a), 124 Stat. at 2560. This change was effective retroactively for penalties assessed after December 31, 2006,

id. sec. 2041(b), and therefore the CDP hearing was suspended in October 2010 so respondent could reconsider the calculation of the penalty.[3] Respondent's revenue agent declined to change the penalty, and petitioner requested review by the IRS Appeals Office (Appeals), which also declined to modify the penalty. Petitioner did not request any collection alternatives during the CDP hearing, and counsel for petitioner requested that the settlement officer issue a notice of determination. Consequently, the settlement officer complied and issued the notice of determination sustaining the collection action.

Petitioner concedes that the Roth IRA transactions he engaged in were listed transactions under Notice 2004-8, supra, for the purposes of the section 6707A penalty. He admits that he is liable for a penalty but challenges the calculation of the penalty.

## Discussion

### I.    Jurisdiction

The parties assume we have jurisdiction over the penalty issue in this case. But the Court has an independent obligation to determine whether it has jurisdiction over a case, and the parties cannot simply stipulate jurisdiction or

---

[3]The parties scarcely mention, much less substantively discuss, this midhearing "time-out" and apparent referral to the IRS examination function. We therefore will not further comment on these events.

waive jurisdictional defects. Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006); Charlotte's Office Boutique, Inc. v. Commissioner, 121 T.C. 89, 102 (2003), aff'd, 425 F.3d 1203 (9th Cir. 2005). Therefore, we begin our analysis with the jurisdictional question.

The Tax Court is a court of limited jurisdiction and may exercise jurisdiction only to the extent authorized by Congress. Adkison v. Commissioner, 592 F.3d 1050, 1052 (9th Cir. 2010), aff'g on other grounds 129 T.C. 97 (2007). But, we "have jurisdiction to determine whether we have jurisdiction." Smith v. Commissioner, 133 T.C. 424, 426 (2009). In Smith we also held that we did not have jurisdiction to redetermine section 6707A penalties in a petition for redetermination of a deficiency notice. Id. at 428-430. Because the section 6707A penalty did not fit the statutory definition of a deficiency and because the Commissioner could assess and collect the penalty without issuing a statutory notice of deficiency, we lacked deficiency jurisdiction to redetermine the penalty. Id. at 429. We noted, however, that "we would presumably have jurisdiction to redetermine a liability challenge asserted by * * * [the taxpayers] in a collection due process hearing." Id. at 430 n.6. We now turn presumption into conviction and aver our jurisdiction.

We begin by noting that section 6707A allows a taxpayer to request the Commissioner to rescind all or part of the penalty that is imposed because of a violation with respect to a reportable transaction other than a listed transaction if rescission would promote compliance with the Code and effective tax administration. Sec. 6707A(d)(1). Congress explicitly denied taxpayers the ability to seek judicial review of the Commissioner's rescission decision. Sec. 6707A(d)(2). The provision prohibiting judicial review applies only to subsection (d) of section 6707A and does not otherwise preclude our jurisdiction to review this penalty under section 6330. See H.R. Rept. No. 108-548 (Part 1), at 262 n.233 (2004) (stating that this provision contained in the American Jobs Creation Act of 2004 (AJCA), Pub. L. No. 108-357, 118 Stat. 1418, "does not limit the ability of a taxpayer to challenge whether a penalty is appropriate (e.g., a taxpayer may litigate the issue of whether a transaction is a reportable transaction (and thus subject to the penalty if not disclosed) or not a reportable transaction (and thus not subject to the penalty))").

Section 6330(d)(1) as amended by the Pension Protection Act of 2006, Pub. L. No. 109-280, sec. 855(a), 120 Stat. at 1019, expanded the Court's review of collection actions to include collection actions where the underlying tax liability consists of penalties not reviewable in a deficiency action. See Williams v.

Commissioner, 131 T.C. 54, 58 n.4 (2008); Callahan v. Commissioner, 130 T.C. 44, 48 (2008).  In a CDP hearing a taxpayer may challenge "the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."  Sec. 6330(c)(2)(B).  In his hearing petitioner challenged the amount of the underlying tax liability that resulted from the section 6707A penalty.  See Callahan v. Commissioner, 130 T.C. at 49 ("We have interpreted the phrase 'underlying tax liability' as including any amounts a taxpayer owes pursuant to the tax laws that are the subject of the Commissioner's collection activities.").  Petitioner has not had an opportunity to dispute the amount of the penalty, and consequently, we have jurisdiction to redetermine the amount of the penalty.

II.    Standard of Review

Ordinarily, our review of the determinations in a CDP hearing is for abuse of discretion.  Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  But when the underlying tax liability is properly at issue, we review the determination de novo.  Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 181-182.

Petitioner challenges respondent's determination as to the amount of the penalty, and thus, we review that determination de novo.

III.    6707A Penalty

Section 6707A(a) imposes a penalty on "[a]ny person who fails to include on any return or statement any information with respect to a reportable transaction which is required under section 6011 to be included with such return or statement".  The amount of the penalty before the SBJA depended on whether the transaction was a reportable transaction or a listed transaction.  Sec. 6707A(b) (2006), amended by SBJA sec. 2041(a).  For reportable transactions other than listed transactions, it was $10,000 for natural persons and $50,000 for others, and for listed transactions, it was $100,000 for natural persons and $200,000 for others.  Id.  The penalty applied regardless of whether the listed or reportable transaction is respected for Federal income tax purposes.  Petitioner concedes he engaged in a listed transaction and that he failed to properly disclose his participation.

The penalty for failing to disclose a listed transaction on a return after enactment of the SBJA is "75 percent of the decrease in tax shown on the return as a result of such transaction (or which would have resulted from such transaction if such transaction were respected for Federal [income] tax purposes)."  Sec.

6707A(b)(1). In the case of individuals, the statute prescribes minimum and maximum penalties for failing to disclose a listed transaction of $5,000 and $100,000, respectively. Sec. 6707A(b)(2) and (3). The parties disagree as to what return and what amount of tax we should use in calculating the tax. Petitioner urges us to use the amended returns to determine the decrease in tax, and respondent says we must look to the original return. These disparate positions stem from a fundamental disagreement as to what the phrase "decrease in tax shown on the return as a result of the transaction" means. To resolve this dispute, we must examine and interpret the statute.[4]

The starting point for interpreting a statute is its plain and ordinary meaning unless such an interpretation "would produce absurd or unreasonable results". Union Carbide Corp. v. Commissioner, 110 T.C. 375, 384 (1998). Undefined words take their "ordinary, contemporary, common meaning." Hewlett-Packard Co. & Consol. Subs. v. Commissioner, 139 T.C. 255, 264 (2012). We interpret statutes "'in their context and with a view to their place in the overall statutory

_____

[4]The regulations are of no help here, as they merely parrot the statutory language. Sec. 301.6707A-1(a), Proced. & Admin. Regs. The IRS released these final regulations in 2011 with the explicit proviso that the regulations "do not give further guidance on how the amount of the penalty is computed" and stated that it intended to "provide guidance" at a "later time." T.D. 9550, 2011-47 I.R.B. 785, 786.

scheme.'" FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (quoting Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809 (1989)). Where the statute is clear and unambiguous, we need not resort to other tools of statutory interpretation. BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183 (2004). If the statute is silent or ambiguous, we may employ "'traditional tools of statutory construction'", United States v. Home Concrete & Supply, LLC, 566 U.S. ___, ___, 132 S. Ct. 1836, 1844 (2012) (quoting Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 n.9 (1984)), including legislative history, to ascertain congressional intent, Burlington N. R.R. Co. v. Okla. Tax Comm'n, 481 U.S. 454, 461 (1987); Intermountain Ins. Serv. of Vail, LLC v. Commissioner, 134 T.C. 211, 222-223 (2010), rev'd, 650 F.3d 691 (D.C. Cir. 2011), vacated and remanded, 566 U.S. ___, 132 S. Ct. 2120 (2012).

Petitioner urges us to interpret the statute as calculating the penalty using the tax savings produced by the listed transactions. He says we should ignore the tax reported on the return with respect to which he was required to report the listed transaction. Instead, petitioner asks us to focus on the returns prepared years after the reporting obligation arose. He urges us to look at the plain language of the statute, its place in the statutory scheme, and to the legislative history. Respondent, on the other hand, says that the plain meaning of the statute does not

support petitioner's position and urges us to compute the tax with reference only to the tax shown on the original tax return. In his view, we disregard the returns prepared during the audit, the mistakes on the prior return, and the correct tax owed by petitioner when calculating the penalty. To be clear about the stakes, if we adopt petitioner's reading of the statute, the penalty would be the statutory minimum, or $5,000; if we hold for respondent, the penalty will stand as $100,000.

We think the statute is clear and unambiguous: The penalty is calculated with reference to the "tax shown on the return". Sec. 6707A(b). When we look to the penalty provision as a whole, it is clear that Congress has penalized the failure to disclose participation in a listed or otherwise reportable transaction on the return or other information statement giving rise to the disclosure obligation. If the taxpayer fails to report the transaction on that return or information statement, then the penalty is based on the tax shown on that return or information statement, not some other, later filed return or some hypothetical tax. Congress did not say that the penalty should be calculated by reference to tax shown on a return; it did not say to calculate the penalty using the tax required to be shown; and it did not say to calculate the penalty using the decrease in tax resulting from participation in the transaction. Congress very clearly linked the penalty to the tax shown on a

particular return--the return giving rise to the reporting obligation. Absent a "'clearly expressed legislative intent to the contrary'", we will regard the clear and unambiguous language of the statute as conclusive.[5] <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 177 (1993) (quoting <u>United States v. Turkette</u>, 452 U.S. 576, 580 (1981)). The plain meaning of the statute does not support petitioner's position.

Petitioner also contends that the legislative history supports his position, but he fails to point to any actual legislative history. In any event, the documentary evidence referencing the penalty provision does not support petitioner's position. Congress initially enacted section 6707A with a flat penalty of $100,000 for individuals with respect to listed transactions. AJCA sec. 811(a), 118 Stat. at 1575. There was no variable minimum and no variable maximum and no 75% of

---

[5]We observe that the process of divining the legislative intent underlying a statute's language and structure, while subject to canons of construction and well-established methodologies, is hardly an exact science. <u>Compare, e.g.</u>, <u>Halbig v. Burwell</u>, No. 14-5018, __ F.3d __, 2014 WL 3579745, at *13-*17 (D.C. Cir. July 22, 2014) (having found sec. 36B unambiguous, concluding that weight of legislative history, including overall congressional policy goals, did not override statute's plain meaning, which was that tax credits were unavailable to participants in health insurance exchanges established by the Federal Government), <u>vacated and rehearing en banc granted</u>, __ F.3d __, 2014 WL __ (D.C. Cir. Sept. 4, 2014), <u>with</u> <u>King v. Burwell</u>, No. 14-1158, __ F.3d __, 2014 WL 3582800, at *9-*10 (4th Cir. July 22, 2014) (having found sec. 36B ambiguous, concluding that legislative history did not support either plausible interpretation, and deferring to agency's determination that statute permitted tax credits for participants in Federal health insurance exchanges, as consistent with overall congressional policy goals).

tax savings calculation. Congress added the current calculation as part of the SBJA, likely because of concern that an inflexible penalty would create harsh results. See H.R. Rept. No. 111-447, at 15 (2010).

Unfortunately, no direct legislative history exists to explain the change. What we do have is the rationale behind an almost identical amendment included in a bill that never became law.[6] H.R. 4849, 111th Cong., sec. 111 (2010). The House passed H.R. 4849 partly out of concern for the potential inequities an inflexible penalty may create. H.R. Rept. No. 111-447, supra at 15. Congress had heard from the National Taxpayer Advocate that the potential magnitude of the penalties had an overly harsh impact on individuals and small businesses. Id. at 15-16. The tax advisers may not have told these taxpayers of the reporting obligation, and the penalties, for an individual conducting business through an S corporation, could reach $300,000 per year for a listed transaction that yielded little or no tax benefit. See National Taxpayer Advocate, 2008 Annual Report to Congress (Vol. One), at 342-343, 419-421 (2008); see also sec. 6707A(b)(2)

---

[6]The only difference between the enacted and proposed amendments was the inclusion in the proposed amendment to sec. 6707A(b)(2) of the additional words "for any taxable year" between the words "transaction" and "shall not exceed".

(2004) (imposing a $200,000 penalty on nonindividual taxpayers for failing to disclose a listed transaction).

Transactions that span multiple tax years magnify the effect as the reporting obligation exists for each return. National Taxpayer Advocate, 2008 Annual Report to Congress (Vol. One), at 420 (2008). The House Ways and Means Committee explained that the new penalty calculation would "provide a mechanism for establishing a penalty amount that will be proportionate to the misconduct to be penalized, without discouraging compliance with the requirement to disclose reportable transactions." H.R. Rept. No. 111-447, supra at 16.

Petitioner believes other legislative history inextricably links the penalty calculation to the tax savings. He points to the Joint Committee on Taxation's general explanation, also known as the Blue Book, to bolster his position. See Staff of J. Comm. on Taxation, General Explanation of Tax Legislation Enacted in the 111th Congress, at 476-480 (J. Comm. Print 2011). The Joint Committee explained that Congress desired to spare small businesses and individuals "unconscionable hardship * * * as a result of the magnitude of the penalty" where the penalty "exceed[ed] the tax savings claimed on these returns". Id. at 478. Contrary to petitioner's position, the Blue Books are not legislative history,

though they can sometimes be relevant if persuasive. United States v. Woods, 571 U.S. ___, ___, 134 S. Ct. 557, 568 (2013). In any event, we remain unconvinced that the combined import of the Blue Book and the earlier bill override our prior conclusions as to the statute's plain meaning.

It is clear that in the earlier bill Congress intended to blunt the effect of section 6707A for taxpayers who failed to disclose a transaction but nonetheless did not benefit much from that transaction. But it is equally clear that Congress was concerned with the "tax reported on the participant's income tax return as a result of participation in the transaction", not the tax required to be shown. H.R. Rept. No. 111-447, supra at 16. It is also clear that what Congress intended to penalize is the failure to disclose participation, not the tax savings produced by the transaction. Id. at 15.[7] That Congress linked the penalty to the tax savings does not change the fact that the culpable act here is the failure to disclose. Furthermore, the 2010 change linked the penalty not to the tax savings calculated with the benefit of hindsight but rather to the tax savings as claimed on the tax return. In this vein, even the Blue Book fails to persuade as the Joint Committee

---

[7]See also Staff of J. Comm. on Taxation, General Explanation of Tax Legislation Enacted in the 108th Congress, at 361 (J. Comm. Print 2005) (discussing the American Jobs Creation Act of 2004, Pub. L. No. 108-357, sec. 811, 118 Stat. at 1575, including "[r]easons for [c]hange").

explained the change as aimed at "achiev[ing] proportionality between the penalty and the tax savings that were the object of the transaction," and not to the actual tax saved. Staff of J. Comm. on Taxation, General Explanation of Tax Legislation Enacted in the 111th Congress, supra at 479.

We note also section 6651(a)(2), which imposes an addition to tax for failure "to pay the amount shown as tax on any return specified [by parts of the Code]". At first glance, this addition to tax would ignore the correct tax liability, and a taxpayer who reported a tax greater than the actual tax due would suffer. But section 6651(c)(2) ameliorates this potentially harsh result by providing: "If the amount required to be shown as tax on a return is less than the amount shown as tax on such return, subsections (a)(2) and (b)(2) shall be applied by substituting such lower amount."

Congress obviously knows how to link a penalty or an addition to tax to the tax required to be shown on the return and has done so. Consequently, the fact that it did not do so in section 6707A tends to bolster our holding that the penalty applies to the amount shown on petitioner's first filed return.[8] See Marx v. Gen.

_____

[8]We note that, here, petitioner amended his first filed return after the date prescribed for filing a return for the 2004 tax year. We do not express an opinion as to the result had he filed his first amended return before that date. See Goldstone v. Commissioner, 65 T.C. 113, 116 (1975) (where taxpayers sought to

(continued...)

Revenue Corp., 568 U.S. ___, ___, 133 S. Ct. 1166, 1177 (2013) (declining to read into 15 U.S.C. sec. 1692k(a)(3) a limitation on the ability of courts to award costs under rule 54 of the Federal Rules of Civil Procedure in part because other "[s]tatutes confirm that Congress knows how to limit a court's discretion * * * when it so desires").[9]  Congress did not do so in section 6707A, instead opting to impose the penalty as a percentage "of the decrease in tax shown on the return as a result of such transaction (or which would have resulted from such transaction if such transaction were respected for Federal tax purposes)."  Sec. 6707A(b)(1). Without a subsection analogous to section 6651(c)(2), we calculate the penalty by reference to the tax shown on the return and do not consider the amount required to be shown.

Section 6707A imposes a strict liability penalty.  See H.R. Rept. No. 111-447, at 13.  While it may be harsh in situations where a taxpayer mistakenly

---

[8](...continued)
avoid a credit's recapture in a later year by amending the return on which the credit was claimed, holding that the Commissioner was entitled to reject the amended return and recapture the credit in the later year but observing that courts had upheld the validity of amended returns in other circumstances, such as where the amended returns were filed before the filing deadline for the subject tax year).

[9]We note also that a net operating loss carryback from a subsequent tax year does not reduce the tax required to be shown on the return for purposes of calculating the sec. 6651(a)(2) addition to tax.  See Vines v. Commissioner, T.C. Memo. 2009-267, slip op. at 15, aff'd, 418 Fed. Appx. 900 (11th Cir. 2011).

overstates his tax, such is the result of the plain meaning of the statutory language.[10] Legislative history does not indicate a clear congressional intent to the contrary, and we therefore find that the settlement officer did not err in the calculation of the penalty.

The Court has considered all of petitioner's contentions, argument, requests, and statements. To the extent not discussed herein, we conclude that they are moot, irrelevant, or without merit. To reflect the foregoing,

Decision will be entered

for respondent.

---

[10]A court's "obligation to avoid adopting statutory constructions with absurd results is well-established" and can, in rare cases, override the literal meaning of unambiguous statutory language. Halbig v. Burwell, __ F.3d at __, 2014 WL 3579745, at *10 (citing Public Citizen v. DOJ, 491 U.S. 440, 454-455 (1990)). See generally John F. Manning, "The Absurdity Doctrine", 116 Harv. L. Rev. 2387 (2003). The statutory construction we adopt here does not, in petitioner's case, yield "'an outcome so contrary to perceived social values that Congress could not have intended it.'" See Halbig v. Burwell, __ F.3d at __, 2014 WL 3579745, at *10 (quoting United States v. Cook, 594 F.3d 883, 891 (D.C. Cir. 2010)). Different facts--such as, for example, a mere scrivener's error in a decimal place, resulting in tax shown on the return of ten or even one hundred times the facially correct amount--might entail a different analysis.