T.C. Memo. 2017-46

UNITED STATES TAX COURT

PATRICK BITTER, JR., Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10462-15L.

Filed March 20, 2017.

<u>Anthony V. Diosdi</u>, for petitioner.

<u>Daniel J. Bryant</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case, petitioner

seeks review, pursuant to section 6330(d)(1),[1] of the determination by the Internal

Revenue Service (IRS or respondent) to uphold a notice of intent to levy.  For pe-

_____

[1]All statutory references are to the Internal Revenue Code in effect at all
relevant times, and all Rule references are to the Tax Court Rules of Practice and
Procedure.  We round all dollar amounts to the nearest dollar.

[*2] titioner's 2004, 2005, and 2006 tax years, the IRS assessed penalties under section 6707A for failure to disclose on his Federal income tax returns his participation in a reportable transaction. The sole issue for decision is whether petitioner was barred from raising at the CDP hearing his liability for these penalties because he had had, and had availed himself of, a prior opportunity to challenge the penalties at an earlier conference with the IRS Appeals Office. We agree with respondent on this point and will accordingly sustain the proposed collection action.

## Background

The parties have submitted the case for decision under Rule 122, and all relevant facts have been stipulated or otherwise included in the record. See Rule 122(a). The following facts are based on the parties' pleadings and motion papers, including the attached affidavits and exhibits. Petitioner resided in California when he filed his petition.

During the years in question, petitioner was the sole shareholder of Patrick H. Bitter, Jr., M.D., P.C. (PC), an S corporation. Effective January 1, 2002, PC adopted a defined benefit pension plan (Plan) in which petitioner was the only participant. The Plan purchased a life insurance policy (Policy) on petitioner's life. The death benefit under the Policy was $4,728,718, but the death benefit

[*3] under the Plan was only $701,300.  The "excess death benefit" was thus $4,027,418.  For each of the years in question, PC deducted on its Form 1120S, U.S. Income Tax Return for an S Corporation, its contributions to the Plan, which were used to pay premiums on the Policy.

On February 13, 2004, the IRS issued Rev. Rul. 2004-20, 2004-1 C.B. 546. "Situation 2" in that revenue ruling describes a life insurance transaction resembling that in which PC and the Plan engaged.  The IRS ruled (among other things) that

> [t]ransactions that are the same as, or substantially similar to, the transaction described in Situation 2 of this revenue ruling are identified as "listed transactions" * * * effective February 13, 2004 * * * , provided that the employer has deducted amounts used to pay premiums on a life insurance contract for a participant with a death benefit under the contract that exceeds the participant's death benefit under the plan by more than $100,000.  [Id., 2004-1 C.B. at 549].

On its Forms 1120S for 2004, 2005, and 2006, PC deducted contributions of $225,422, $225,353, and $224,159, respectively, to the Plan, and these sums were used to pay premiums on the Policy.  On timely filed Forms 1040, U.S. Individual Income Tax Return, for 2004, 2005, and 2006, petitioner claimed pass-through deductions of $204,002, $203,934, and $224,159, respectively, on account of PC's contributions to the Plan.  He did not disclose the life insurance transaction on

[*4] those returns by including Form 8886, Reportable Transaction Disclosure Statement, or otherwise.

On June 26, 2012, the IRS notified petitioner that it proposed to assess against him penalties under section 6707A for 2004, 2005, and 2006. The IRS determined that the life insurance transaction in which PC and the Plan had engaged was a "listed transaction" because it was "substantially similar" to that described in Rev. Rul. 2004-20, Situation 2. See sec. 1.6011-4(b)(2), Income Tax Regs. And it determined that petitioner had failed to disclose on his Forms 1040 his participation in that transaction as required by section 6011. See id. para. (c)(3) (providing that a taxpayer "has participated in a listed transaction if the taxpayer's tax return reflects tax consequences" of the transaction or if he knows or should know that his tax benefits "are derived directly or indirectly from tax consequences" of a listed transaction).

For penalties assessed after December 31, 2006, "the amount of the penalty * * * with respect to any reportable transaction shall be 75 percent of the decrease in tax shown on the return as a result of the transaction," with a maximum penalty of $100,000 per return for a listed transaction engaged in by a natural person. Sec. 6707A(b)(1) and (2)(A). The IRS determined that the "decrease in tax shown on * * * [petitioner's] return as a result of the transaction" was $68,967 for 2004,

**[*5]** $73,519 for 2005, and $80,025 for 2006.  It accordingly proposed assessing penalties equal to 75% of each of those amounts, or $51,725, $55,139, and $60,019, respectively.

The IRS letter informed petitioner that if he did not agree with that proposed assessment, he could "request a conference with our Appeals Office" by "forward-[ing] a written protest."  Petitioner forwarded a timely protest dated July 24, 2012, that advanced three contentions.  First, he urged that the life insurance transaction in which PC and the Plan had engaged was not a "listed transaction" because it was not "substantially similar" to that described in Rev. Rul. 2004-20, Situation 2.  Second, while conceding that he had not made disclosure on his individual returns, he noted that PC, as a protective measure, had attached to its Form 1120S for each year a Form 8886 disclosing the transaction.  He contended that this manner of disclosure constituted substantial compliance with the regulations.

Finally, if these threshold questions were resolved against him, petitioner urged that the IRS had calculated the penalties incorrectly.  In March 2011 PC had executed a closing agreement with the IRS pursuant to which the Plan prospectively changed its funding method and converted to a traditional defined benefit plan covering all of PC's eligible employees effective January 1, 2009.  In connection with the closing agreement, an IRS actuary had prepared in February 2011 a

[*6] memo that recalculated PC's deductible contributions to the Plan for each year in question as if the Plan had been "qualified" from its inception. Relying on that memo, petitioner contended that the section 6707A penalty, if applicable at all, should be calculated as 75% of the decrease in tax attributable to the disallowed contributions as thus recalculated. If that approach were followed, petitioner asserted that the penalties would be reduced to $14,280 for 2004, $26,201 for 2005, and zero for 2006.

Petitioner in his protest requested a conference with the IRS Appeals Office, and the case was assigned to Appeals Officer Paladini (AO Paladini). On December 19, 2013, AO Paladini sent to petitioner's representatives an Appeals case memorandum setting forth her preliminary findings. She concluded that the Plan as originally conceived in 2002 was a "listed transaction" and that the regulations required its disclosure on petitioner's individual returns for 2004, 2005, and 2006. See Soni v. Commissioner, T.C. Memo. 2013-30, 105 T.C.M. (CCH) 1216, 1218-1219. And she rejected petitioner's proposed recomputation of the penalties in light of the 2011 closing agreement, noting the statutory requirement that the penalty be computed as 75% of the decrease in tax "shown on the return" as a result of the transaction. See sec. 6707A(b)(1).

**[*7]** Following a conference with petitioner's representatives, AO Paladini informed them on January 2, 2014, that "Appeals does not foresee any litigation hazards on your case" and therefore "can offer no concession." On January 23, 2014, the Appeals team manager notified petitioner that the Appeals Office had upheld the proposed penalties and would proceed with assessment. On February 24, 2014, the IRS assessed section 6707A penalties as originally determined, i.e., in the amounts of $51,725, $55,139, and $60,019, for 2004, 2005, and 2006, respectively.

In an effort to collect these unpaid liabilities, the IRS on July 3, 2014, sent petitioner a Notice of Intent to Levy and Your Right to a Hearing. He timely requested a CDP hearing, and the case was assigned to Settlement Officer (SO) Fernando, who scheduled a telephone CDP hearing for October 14, 2014. Before the hearing, petitioner's representative submitted a letter stating that "[t]he taxpayer wishes to administratively contest the * * * [section 6707A] penalties through this Collection Due Process Hearing." In that letter he urged that the penalties be abated in whole or in part, repeating the arguments he had advanced at the prior Appeals Office conference. Petitioner did not seek a collection alternative and provided none of the financial documentation that would be required for consideration of a collection alternative.

**[\*8]**   SO Fernando concluded that petitioner could not challenge his liability for the penalties because he had had a prior opportunity to do so, an opportunity of which he had taken advantage by filing his July 2012 protest with the IRS Appeals Office.  SO Fernando confirmed that the penalty for each year had been properly assessed and that all other requirements of applicable law and administrative procedure had been met.  On March 26, 2015, the IRS issued petitioner a notice of determination sustaining the proposed collection action, and petitioner timely sought review in this Court.

Discussion

The sole argument petitioner advances is that SO Fernando erred in declining to consider his demand that the section 6707A penalties be abated in whole or in part.  Where the validity of a taxpayer's underlying tax liability is properly at issue in a CDP case, the Court reviews the IRS' determination de novo.  Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Where the taxpayer's underlying liability is not properly at issue, we review the IRS decision for abuse of discretion only.  Id. at 182.  Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law.  Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

**[*9]** A taxpayer may raise a CDP challenge to the existence or amount of his underlying tax liability only if he "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." Sec. 6330(c)(2)(B). In determining whether the taxpayer had a prior opportunity to dispute his liability, the regulations distinguish between liabilities that are subject to deficiency procedures and those that are not. For liabilities subject to deficiency procedures, an opportunity for a post-examination conference with the IRS Appeals Office does not bar the taxpayer (in appropriate circumstances) from contesting his liability in a later CDP proceeding. See sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs. On the other hand, where a liability is not subject to deficiency procedures, "[a]n opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability." Ibid.

As assessable penalties, section 6707A penalties are not subject to deficiency procedures. See Smith v. Commissioner, 133 T.C. 424, 428-430 (2009). Notwithstanding the absence of a notice of deficiency, a taxpayer may be able to dispute his liability for such penalties (without paying them first) by resisting IRS collection efforts through the CDP process and then seeking review in this Court. See id. at 430 n.6 (citing Williams v. Commissioner, 131 T.C. 54, 58 n.4 (2008),

**[*10]** and Callahan v. Commissioner, 130 T.C. 44, 48 (2008)); cf. Gardner v. Commissioner, 145 T.C. 161 (2015) (upholding Tax Court jurisdiction to review section 6700 penalties in the CDP context). But this route to prepayment judicial review is available only if the taxpayer "did not otherwise have an opportunity to dispute such tax liability." Sec. 6330(c)(2)(B).

For example, in Yari v. Commissioner, 143 T.C. 157 (2014), aff'd, __ F. App'x __, 2016 WL 5940054 (9th Cir. Oct. 13, 2016), the IRS assessed a section 6707A penalty against the taxpayer and issued him a notice of intent to levy. After receiving a notice of determination sustaining the levy, the taxpayer petitioned our Court. There was no evidence in the record that the taxpayer had received notice of the assessment, that he had been offered the opportunity to protest the assessment, or (if so) that he had taken advantage of that opportunity. Under these circumstances, we allowed the taxpayer to contest the amount of the penalty because he had not had a prior opportunity to dispute it. Id., 143 T.C. at 162.[2]

---

[2]Presented with similar facts, we reached similar results in CDP cases involving liability for other assessable penalties. See Mason v. Commissioner, 132 T.C. 301, 318 (2009) ("a section 6672(b)(1) notice that was not received * * * by a taxpayer does not constitute an opportunity to dispute that taxpayer's liability"); Callahan v. Commissioner, 130 T.C. 44, 50 (2008) (addressing sec. 6702 frivolous return penalties).

[*11] Under this framework, a taxpayer in a CDP case is entitled to challenge his underlying liability for a section 6707A penalty only if he did not have a prior opportunity to dispute it. For this purpose, a prior opportunity includes "a prior opportunity for a conference with Appeals." Sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs. We have sustained the validity of this regulation even though the taxpayer (as was also true here) had no right to judicial review of the prior Appeals Office determination. See Lewis v. Commissioner, 128 T.C. 48, 60-61 (2007).[3] Since Lewis, we have consistently precluded a taxpayer from raising a liability challenge in a non-deficiency CDP case when he had an opportunity to present that challenge to the Appeals Office before the IRS commenced collection action. See Smith v. Commissioner, T.C. Memo. 2016-186, at *11-*12; Mangum v. Commissioner, T.C. Memo. 2016-24, 111 T.C.M. (CCH) 1099, 1102 (declining to reconsider Lewis).[4]

---

[3]Accord, Iames v. Commissioner, No. 16-1154, __ F.3d __, 2017 WL 908214, at *4 (4th Cir. Mar. 7, 2017) (finding the regulation to be a "straightforward interpretation of [s]ection 6330(c)(2)(B)"); Keller Tank Servs. II, Inc. v. Commissioner, No. 16-9001, __ F.3d __, 2017 WL 676503, at *15-*17 (10th Cir. Feb. 21, 2017); Hassell Family Chiropractic, DC, PC v. Commissioner, 368 F. App'x 695, 696 (8th Cir. 2010) (unpublished), aff'g T.C. Memo. 2009-127.

[4]Federal District Courts reached similar conclusions in CDP cases over which they had jurisdiction pursuant to former sec. 6330(d)(1)(B). See, e.g., Lee v. IRS, 89 A.F.T.R.2d (RIA) 2002-1520 (M.D. Tenn. 2002) ("Plaintiff received

(continued...)

[*12] Petitioner had, and availed himself of, a prior opportunity to challenge the section 6707A penalties by filing a protest with the IRS in July 2012. He was then offered, and his representatives attended, a conference with the IRS Appeals Office. The Appeals Office considered and comprehensively addressed each of petitioner's arguments during a review process that lasted more than a year. This process unquestionably afforded petitioner "a meaningful opportunity to dispute * * * [his] underlying tax liability." Lewis, 128 T.C. at 61.[5]

Because petitioner availed himself of the "opportunity for a conference with Appeals * * * before * * * the assessment of the liability," sec. 301.6330-1(e)(3), Q&A-E2, Proced. and Admin. Regs., he was barred by section 6330(c)(2)(B) from disputing that liability again during the CDP hearing. And because he could not

---

[4](...continued)
notice of the excise tax assessments and actually availed himself of the opportunity to dispute the excise tax liability to the Appeals Office; therefore, the underlying excise tax liability cannot be raised in the hearing[.]"); Adams v. United States, 2002-1 U.S. Tax Cas. (CCH) para. 50,295 (D. Nev. 2002) (holding similarly in the case of a civil penalty under sec. 6682).

[5]Because petitioner requested a CDP hearing nine months after the IRS Appeals Office completed its review of his protest and notified him of its conclusion upholding the sec. 6707A penalties, he errs in relying on Perkins v. Commissioner, 129 T.C. 58 (2007). In that case the taxpayer requested a CDP hearing before the Appeals Office conference on the underlying liability had been concluded. Consequently, the Appeals Office conference in Perkins did not constitute a "prior opportunity" to contest the underlying liability. See id. at 66-67.

[*13] challenge his liability for the penalties at the CDP hearing, he is likewise precluded from disputing the penalties here.  See Giamelli v. Commissioner, 129 T.C. 107 (2007); Goza, 114 T.C. at 181-182.[6]

Where there is or can be no challenge to the amount of a taxpayer's underlying tax liability, we review the IRS determination for abuse of discretion only. Goza, 114 T.C. at 181-182.  In deciding whether SO Fernando abused his discretion in sustaining the collection action we consider whether he:  (1) properly verified that the requirements of applicable law and administrative procedure have been met; (2) considered any relevant issues petitioner raised; and (3) considered whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary."  See sec. 6330(c)(3).

Our review of the record establishes that SO Fernando properly discharged all of these responsibilities.  Petitioner did not request a collection alternative and did not submit any of the financial information that would have been required for

_____

[6]As in Lewis, 128 T.C. 48, 61 n.9 (2007), we need not decide whether the mere offer of a conference with Appeals in a sec. 6707A penalty case "is sufficient * * * to preclude subsequent collection review consideration if the taxpayer declines the offer without participating in such a conference."  But cf. Thompson v. Commissioner, T.C. Memo. 2012-87, 103 T.C.M. (CCH) 1470, 1472 ("A taxpayer has the opportunity to dispute his liability for a trust fund recovery penalty when he receives a Letter 1153.").

**[\*14]** consideration of a collection alternative.[7] Finding no abuse of discretion in any respect, we will sustain the proposed collection action.[8]

To reflect the foregoing,

<u>An appropriate decision</u>

<u>will be entered</u>.

---

[7]Petitioner has no plausible claim that SO Fernando erred in declining to "rescind" the penalties. Sec. 6707A(d) gives the IRS discretionary authority to "rescind all or any portion of" a penalty, but only if "the violation is with respect to a reportable transaction other than a listed transaction." Sec. 6707A(d)(1)(A). If petitioner participated in a listed transaction, as the IRS determined, he could not have qualified for such relief. In any event, the IRS' discretionary determination as to rescission of a penalty "may not be reviewed in any judicial proceeding." Sec. 6707A(d)(2); see <u>Yari v. Commissioner</u>, 143 T.C. 157, 162 (2014); <u>Smith v. Commissioner</u>, 133 T.C. 424, 428 (2009).

[8]Although petitioner cannot contest his liability for the penalties in this CDP case, he does have a judicial remedy. As the IRS informed him when sustaining the penalties after the initial Appeals Office conference: "If you want to appeal the penalty assessment, you must file a formal suit with either the United States District Court or the United States Court of Federal Claims" after first paying the balance due on the assessed penalties and filing a refund claim with the IRS. <u>See</u> <u>Smith</u>, 133 T.C. at 430 n.6.