154 T.C. No. 11

UNITED STATES TAX COURT

AMANDA IRIS GLUCK IRREVOCABLE TRUST, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5760-19L.                       Filed May 26, 2020.

P was a direct and indirect partner in partnerships subject to the
unified audit and litigation procedures of the Tax Equity and Fiscal
Responsibility Act of 1982. See I.R.C. secs. 6221-6234 (as in effect
for years before 2018). In 2012 one of the partnerships in which P
held an indirect interest sold property and realized a large capital
gain. P allegedly failed to report its entire distributive share of that
gain.

R adjusted P's 2012-2015 returns via "computational adjust-
ments." See I.R.C. sec. 6231(a)(6). These adjustments eliminated the
net operating loss (NOL) P had claimed for 2012 and disallowed the
NOL carryforward deductions P had claimed for 2013-2015, creating
balances due for those years. R immediately assessed the resulting
tax. See I.R.C. secs. 6222(c), 6230(a)(1).

R mailed a levy notice in an effort to collect P's 2013-2015 tax,
and P timely requested a collection due process (CDP) hearing. The
settlement officer sustained the levy notice. P timely petitioned for

review, seeking to challenge its underlying liabilities for 2012-2015. R moved to dismiss as to 2012 and 2013, noting that the 2012 tax year was never before the Court and that P's 2013 liability had been fully satisfied by application of credits from other years. R moved for summary judgment as to 2014 and 2015.

  1. Held: We lack jurisdiction with respect to P's 2012 tax year.

  2. Held, further, P properly invoked the Court's jurisdiction under I.R.C. sec. 6330(d)(1) to review its tax liabilities for 2013-2015. Although the Court generally lacks jurisdiction in a deficiency case to review computational adjustments, see I.R.C. sec. 6230(a)(1), our jurisdiction in a CDP case is not so limited. McNeill v. Commissioner, 148 T.C. 481 (2017), followed.

  3. Held, further, P's 2013 liability has been paid in full, so P's challenge to the collection action for that year is moot.

  4. Held, further, P was permitted to challenge its underlying liabilities for 2014 and 2015 because it had had no prior opportunity to do so. See I.R.C. sec. 6330(c)(2)(B). P properly raised an underlying liability challenge during the CDP hearing by contending that R had improperly disallowed its NOL carryforward deductions for 2014 and 2015. Because genuine disputes of material fact exist as to P's correct tax liabilities for those years, respondent's motion for summary judgment will be denied.

Bob G. Goldberg, for petitioner.

Marissa J. Savit and Thomas A Deamus, for respondent.

# OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case petitioner seeks review pursuant to section 6330(d)(1)[1] of a determination by the Internal Revenue Service (IRS or respondent) to sustain collection action for tax years 2013, 2014, and 2015.  During 2012 petitioner was a direct and indirect partner in partnerships that were subject to the unified audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA).  <u>See</u> secs. 6221-6234 (as in effect for years before 2018).  The IRS made a large "computational adjustment" to petitioner's 2012 return and assessed the resulting deficiency.  <u>See</u> secs. 6230(a)(1), 6231(a)(6).  That adjustment eliminated petitioner's net operating loss (NOL) for 2012 and its NOL carryforwards to 2013-2015, creating the tax liabilities that are the subject of this collection action.

Petitioner timely petitioned this Court, urging that we not sustain the collection action and determine that "no additional taxes are owed by the petitioner for the 2012, 2013, 2014 and 2015 calendar years."  Respondent contends that we lack jurisdiction with respect to 2012 because there was no collection action for

---

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

that year, and that the collection action for 2013 has become moot because that liability has since been fully paid. Respondent has moved to dismiss with respect to those two years; we agree and will grant that motion.

With respect to 2014 and 2015 respondent has moved for summary judgment. We conclude that petitioner is entitled to challenge its underlying liabilities for these years and that there are genuine disputes of material fact concerning the existence and amounts of those liabilities. We will therefore deny respondent's motion for summary judgment.

## Background

The following facts are derived from the parties' pleadings and motion papers, including the attached declarations and exhibits. See Rule 121(b). These facts are stated solely for the purpose of ruling on the pending motions, not as findings of fact in this case. See Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). Petitioner had a mailing address in New York when it filed its petition.

In 2012 petitioner was a partner in Stellar GT Promote, LLC (Promote), a partnership for Federal income tax purposes. Promote was a partner in two other partnerships, Stellar GT, LLC (GT), and Stellar Member, LLC (Member). Member was also a partner in GT. All three partnerships were subject to TEFRA.

In 2012 GT recognized capital gain of $88,461,244. Promote's distributive share of that gain was allegedly $79,494,545. This allegedly consisted of $48,580,162 from the interest that Promote held in GT directly, plus $30,914,383 from the interest that Promote held in GT indirectly through Member.

For 2012 Promote filed Form 1065, U.S. Return of Partnership Income. It reported $79,494,545, its alleged distributive share of the gain, on Form 4797, Sales of Business Property. But on Schedule K, Partner's Distributive Share Items, Promote reported only the $30,914,383 of gain allocated to it indirectly, allegedly omitting the $48,580,162 of gain allocated to it directly.

Promote issued Schedules K-1, Partners' Share of Income, Deductions, Credits, etc., to its partners, including petitioner. These Schedules K-1 likewise reported only the $30,914,383 of gain allocated to Promote indirectly. Neither Promote nor any of its partners filed a Form 8082, Notice of Inconsistent Treatment or Administrative Adjustment Request (AAR), with respect to the gain recognized by GT.

For 2012 petitioner filed a return on Form 1041, U.S. Income Tax Return for Estates and Trusts. On this return it allegedly failed to report its distributive share of the gain that had been allocated to Promote directly. Because petitioner did not notify the IRS of this apparent inconsistency, the IRS was permitted to ad-

just petitioner's return by "computational adjustment," without issuing a notice permitting a pre-assessment challenge. See secs. 6222(c), 6230(a)(1), 6231(a)(6).

On June 15, 2017, the IRS sent petitioner two Letters 4735, Notice of Computational Adjustment. In the first letter the IRS adjusted upward, by $6,543,748, petitioner's distributive share of Promote's capital gain for 2012, eliminating the NOL petitioner had reported for that year. In the second letter the IRS disallowed the NOL carryforwards from 2012 that petitioner had claimed as deductions for 2013, 2014, and 2015, creating a balance due for each year.

Each Letter 4735 explained that "[t]he adjustment is due to your inconsistent treatment of a partnership item related to the section 1231 gain reported by a partnership in which you have an indirect ownership." Each letter informed petitioner that, if it wished to dispute the computational adjustments, it would need to pay the resulting liabilities and file a claim for refund. Petitioner did not do so.

The IRS thereafter assessed petitioner's liabilities for 2013-2015. When petitioner did not pay these liabilities upon notice and demand, the IRS issued, on January 11, 2018, a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing (levy notice). As of the date of the levy notice, petitioner's outstanding liabilities for 2013-2015 exceeded $180,000.

Petitioner timely requested a CDP hearing. It listed the tax years in issue as 2012-2015, although the levy notice concerned only 2013-2015. It asserted that it had not received certain IRS notices because its "office moved location during 2017 and mail from IRS was not forwarded to [its] new location." Petitioner requested more information as to why its "2011 [sic] net operating losses" were disallowed. It did not request a collection alternative.

Petitioner's case was assigned to a settlement officer (SO) in the East Hartford, Connecticut, Appeals Office. The SO confirmed that the tax liabilities for 2013-2015 had been properly assessed, that proper notice and demand for payment was mailed to petitioner's last known address, and that all other requirements of applicable law and administrative procedure had been met. The SO noted that petitioner had an outstanding liability for 2012 but that its 2012 liability was not a subject of the levy notice.

The SO held a CDP conference with petitioner's representative on February 13, 2019. Petitioner's representative challenged its liability for 2012, urged that it had had no prior opportunity to dispute that liability, and asserted that it had no liability for 2013, 2014, or 2015. Apart from contesting the disallowance of NOL carryforwards from 2012, petitioner did not dispute the tax liabilities as shown on its 2013-2015 returns. Nor did it seek a collection alternative.

The SO called petitioner's representative the next day and explained that he lacked jurisdiction over petitioner's 2012 taxable year and thus could not consider an underlying liability challenge for that year. The SO did not explicitly address during the hearing petitioner's underlying liability challenge for 2013-2015, which was predicated on the allegedly erroneous disallowance of NOL carryforward deductions for those years. The SO offered petitioner another opportunity to pursue a collection alternative, but its representative declined that option.

On February 27, 2019, the IRS issued petitioner a notice of determination sustaining the proposed levy for 2013-2015, stating that petitioner was "precluded from raising the underlying liability during this hearing." The notice explained that petitioner's liabilities were based on the computational adjustments set forth in the Letters 4735 issued June 15, 2017. Those letters informed petitioner that it could dispute these adjustments by paying the tax and filing a claim for refund. Concluding that petitioner had thus had, but neglected to take advantage of, a prior opportunity to dispute its 2013-2015 tax liabilities, the SO determined that petitioner could not challenge them during the CDP hearing.

Petitioner timely petitioned this Court. On October 24, 2019, respondent moved to dismiss as to 2012 and 2013, noting that the 2012 tax year was never before the Court and that petitioner's 2013 liability had been fully satisfied by

application of credits from other years. Respondent moved for summary judgment with respect to 2014 and 2015. Petitioner opposed both motions.

Discussion

I.      2012 and 2013 Tax Years

This Court is a court of limited jurisdiction, see Naftel v. Commissioner, 85 T.C. 527, 529 (1985), and we may exercise jurisdiction only to the extent expressly authorized by statute, see Breman v. Commissioner, 66 T.C. 61, 66 (1976). Jurisdiction must be shown affirmatively. As the party invoking the Court's jurisdiction, petitioner bears the burden of establishing that jurisdiction exists. See David Dung Le, M.D., Inc. v. Commissioner, 114 T.C. 268, 270 (2000), aff'd, 22 F. App'x 837 (9th Cir. 2001).

Section 6330(a) requires the IRS, before making a levy, to send a written notice to the taxpayer notifying him of his right to a CDP hearing. We have jurisdiction to review a notice of determination issued to a taxpayer following completion of that hearing if a timely petition is filed. Sec. 6330(d). The IRS had not issued petitioner, at the time it filed its petition, a notice of determination regarding any collection action with respect to its 2012 tax year. We thus lack jurisdiction in this case to consider any challenge to collection action for 2012. See Gallagher v. Commissioner, T.C. Memo. 2018-77, 115 T.C.M. (CCH) 1433 (citing

Pietanza v. Commissioner, 92 T.C. 729, 735 (1989), aff'd, 935 F.2d 1282 (3d Cir. 1991), Pyo v. Commissioner, 83 T.C. 626, 632 (1984), and Anson v. Commissioner, T.C. Memo. 2010-119, 99 T.C.M. (CCH) 1504, 1506).

Petitioner's liability for 2013 was properly before the SO. However, the IRS subsequently applied available credits from other tax years to satisfy in full petitioner's outstanding liability for 2013. Petitioner concedes that its 2013 tax liability was "satisfied on April 23, 2018." Because there no longer exists an unpaid liability for 2013 upon which collection action could be based, this collection review proceeding is moot with respect to that year. See Greene-Thapedi v. Commissioner, 126 T.C. 1 (2006). "Inasmuch as the proposed levy is moot, petitioner has no independent basis to challenge the existence or amount of * * * [its] underlying tax liability in this proceeding." Id. at 8. We will accordingly grant respondent's motion to dismiss for lack of jurisdiction as to 2012 and to dismiss on grounds of mootness as to 2013.

II.     2014 and 2015 Tax Years

A.     Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no

genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); <u>Sundstrand Corp.</u>, 98 T.C. at 520. In deciding whether to grant summary judgment we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. <u>Sundstrand Corp</u>, 98 T.C. at 520. The nonmoving party, however, may not rest upon mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); <u>see</u> <u>Sundstrand Corp.</u>, 98 T.C. at 520.

B.    <u>Standard of Review</u>

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. But our case law tells us what standard to adopt. Where the taxpayer's underlying tax liability is properly before us, we review the SO's determination de novo. <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). In other respects we review the IRS action for abuse of discretion. <u>Id.</u> at 182. Abuse of discretion exists when a determination is "arbitrary, capricious, or without sound basis in fact or law." <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006); <u>Holloway v. Commissioner</u>, T.C. Memo. 2007-175, 94 T.C.M. (CCH) 25, 28, <u>aff'd</u>, 332 F. App'x 421 (6th Cir. 2008).

C.    Underlying Tax Liabilities

A taxpayer may challenge the existence or amount of its underlying liability in a CDP proceeding only if it "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."  Sec. 6330(c)(2)(B).  Petitioner did not receive a statutory notice of deficiency with respect to its 2014 or 2015 tax liability.  Rather, the IRS assessed both liabilities on the basis of "computational adjustments."  See secs. 6222(c), 6231(a)(6).

The SO declined to consider petitioner's underlying liability challenge, reasoning that it had had a prior opportunity to dispute its 2014 and 2015 liabilities, after receiving the Letters 4375, by paying the tax and filing refund claims.  Respondent now concedes (correctly) that the SO's rationale was erroneous.  When section 6330(c)(2)(B) refers to a prior "opportunity to dispute such tax liability," it means an opportunity to dispute the liability in a prepayment posture.  See Credit-Guard of Am., Inc. v. Commissioner, 149 T.C. 370, 375 (2017); Sugarloaf Fund LLC v. Commissioner, 141 T.C. 214, 217 n.2 (2013); Greene-Thapedi, 126 T.C. at 20.  Because petitioner did not have a prior opportunity to dispute its 2014 and 2015 liabilities in a prepayment posture, the CDP route was available to it.

The liabilities at issue arose from computational adjustments to petitioner's 2014 and 2015 returns, which the IRS believed necessary to make those returns consistent with the reporting by the partnerships in which petitioner held interests. We generally lack jurisdiction to review computational adjustments in deficiency proceedings. See sec. 6230(a)(1). But our review in CDP cases is not so limited.

In CDP cases involving assessable penalties (viz., penalties not subject to deficiency procedures), we have jurisdiction to review a taxpayer's underlying liability for the penalty provided that he raised during the CDP hearing a proper challenge thereto. See Yari v. Commissioner, 143 T.C. 157, 162 (2014) (ruling that section 6330(d)(1) "expanded the Court's review of collection actions * * * where the underlying tax liability consists of penalties not reviewable in a deficiency action"), aff'd, 669 F. App'x 489 (9th Cir. 2016); Callahan v. Commissioner, 130 T.C. 44, 49 (2008). Applying the same reasoning we have held that we may, in a CDP case, review underlying liabilities arising from adjustments to partnership items of TEFRA partnerships, even though such items would not have been subject to our review in a deficiency setting. See McNeill v. Commissioner, 148 T.C. 481, 489 (2017).

Petitioner's underlying liabilities for 2014 and 2015 arise from computational adjustments made to conform its return to partnership items of TEFRA

partnerships. Petitioner did not have a prior opportunity to challenge these liabilities. It was thus entitled to challenge them before the SO even though they were assessed on the basis of items over which we would lack jurisdiction if this were a deficiency case.

A taxpayer entitled to dispute its underlying liability must nevertheless present a proper challenge before the SO in order to preserve that challenge for judicial review. See Thompson v. Commissioner, 140 T.C. 173, 178 (2013) ("A taxpayer is precluded from disputing the underlying liability if it was not properly raised in the CDP hearing."); Giamelli v. Commissioner, 129 T.C. 107, 113-114 (2007) (same); sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs. During the CDP hearing petitioner contended that the IRS had improperly disallowed its NOL for 2012 and as a consequence had erroneously determined its 2014 and 2015 liabilities by disallowing its NOL carryforward deductions. See sec. 172(a). Although the NOL originated in 2012, the deductions in question were claimed for 2014 and 2015. Petitioner thus mounted a proper challenge to its tax liabilities for those two years.

Respondent seeks to defend, on an alternative ground, the SO's refusal to consider petitioner's challenge to its 2014 and 2015 liabilities. In respondent's view petitioner was actually disputing its tax liability only for 2012, seeking to

create a putative overpayment for that year and then offset that overpayment against its liabilities for 2014 and 2015. Respondent urges that the SO was not required to consider this argument because petitioner did not have an available credit for 2012, only a disputable claim to a credit.

In so contending, respondent cites a line of cases holding that this Court may consider facts and issues from other tax years to the extent they are "relevant in evaluating a claim that an unpaid tax has been paid." Freije v. Commissioner, 125 T.C. 14, 27 (2005). In determining whether the tax for a CDP year has been paid, rendering collection action for that year inapt, we may consider "whether a credit available from another tax year should be applied to the taxpayer's liability for the year before the Court." Del-Co W. v. Commissioner, T.C. Memo. 2015-142, 110 T.C.M. (CCH) 119, 120. But we may do this only if that other credit "indisputably exists." Ibid.; see Weber v. Commissioner, 138 T.C. 348, 366 (2012); Murphy v. Commissioner, T.C. Memo. 2019-72, at *10. Because petitioner does not have a credit from 2012 that indisputably exists, respondent urges that the SO's bottom line, if not his reasoning, was correct.

We disagree. Although petitioner might have articulated its position a bit more clearly, its basic contention was not that it had a credit from 2012 sufficient to eliminate its liabilities for subsequent years. Rather, it was contending that the

IRS erred in disallowing the NOL carryforward <u>deductions</u> that it had claimed for <u>2014 and 2015</u>.  The situation is no different in principle from one in which the IRS has disallowed (say) business expense deductions for the CDP year.  In both scenarios the taxpayer is challenging his underlying tax liability for the CDP year by disputing the disallowance of deductions he had claimed for that year.

The fact that the source of the deductions petitioner claimed for 2014 and 2015 was an NOL that allegedly arose in 2012 does not change the analysis.  In any case where a taxpayer claims an NOL carryforward or carryback deduction, "[w]e have jurisdiction to consider such facts related to years not in issue as may be necessary for redetermination of tax liability for the period before the Court." <u>Keith v. Commissioner</u>, 115 T.C. 605, 621 (2000); <u>see</u> <u>Lone Manor Farms, Inc. v. Commissioner</u>, 61 T.C. 436, 440 (1974) ("It is well settled that we may determine the correct amount of * * * net operating loss for a year not in issue * * * as a preliminary step in determining the correct amount of a net operating loss carryover to a taxable year in issue."), <u>aff'd</u>, 510 F.2d 970 (3d Cir. 1975); <u>cf.</u> sec. 6214(b).  This reasoning applies with equal force in a CDP case where we are seeking to determine the taxpayer's underlying liability.  <u>See, e.g.</u>, <u>Gaunt v. Commissioner</u>, T.C. Memo. 2018-78, at *22-*23 (analyzing in a CDP case a taxpayer's entitlement to an NOL carryforward deduction for the CDP year).  Indeed, in determin-

ing the allowability of an NOL carryforward or carryback deduction, we may consider facts from the original loss year even though the period of limitations for that year is closed. See Calumet Industries, Inc. v. Commissioner, 95 T.C. 257, 274 (1990).

In short, we find that petitioner properly challenged its underlying tax liabilities for 2014 and 2015 during the CDP hearing and that this issue is properly before us. We review this issue de novo. Goza, 114 T.C. at 181-182. Petitioner bears the burden of establishing both the existence of an NOL for 2012 and the amount of the NOL that may properly be carried to 2014 and 2015. See Rule 142(a); Keith, 115 T.C. at 621.

Petitioner advances several arguments with respect to its entitlement to NOL carryforward deductions for 2014 and 2015. It alleges (among other things) that Promote for 2012 did not improperly omit $48,580,162 of gain from its Form 1065 or from the Schedule K-1 that it furnished petitioner. Rather, petitioner alleges that Promote "was allocable both a gain and a loss in connection with its investment in * * * GT," that "this gain and loss were not reported separately but were netted on [its] 2012 tax return," and that the Schedule K-1 issued to petitioner "reflected this netted amount." If these allegations are correct, respondent's computational adjustments may have been erroneous.

As far as the record discloses, the SO did not address these factual questions, and respondent has not yet addressed them either. Construing all facts and inferences therefrom in the light most favorable to petitioner as the nonmoving party, we find that genuine disputes of material fact exist and preclude summary adjudication at this time. See Rule 121(b); Sundstrand Corp., 98 T.C. at 520.

To reflect the foregoing,

An appropriate order will be issued.