154 T.C. No. 4

UNITED STATES TAX COURT

LAIDLAW'S HARLEY DAVIDSON SALES, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14616-14L.                    Filed January 16, 2020.

The IRS determined that P, a C corporation, failed to timely
disclose its participation in a listed transaction as required under
I.R.C. sec. 6011 when it filed a Form 1120, "U.S. Corporation Income
Tax Return", for the tax year ending May 31, 2008. The revenue
agent responsible for examining P's May 2008 return issued a 30-day
letter to P that proposed to assert a penalty under I.R.C. sec. 6707A
against P for failing to disclose reportable transaction information
with that return and that gave P the right to appeal that proposal to the
IRS Office of Appeals ("Appeals"). That 30-day letter was the first
formal communication to P of the determination to assess the I.R.C.
sec. 6707A penalty. Roughly three months after the 30-day letter was
issued, the agent's immediate supervisor approved the penalty
assertion and signed a Form 300, "Civil Penalty Approval Form".

P requested a conference with Appeals to contest the revenue
agent's I.R.C. sec. 6707A penalty proposal. Appeals sustained the
penalty proposal, and the IRS assessed the penalty. After the IRS
sent P a levy notice to collect the penalty liability, P requested a

collection due process ("CDP") hearing before Appeals. Thereafter, Appeals issued a notice of determination sustaining the levy action.

P timely filed in the Tax Court a petition challenging the notice of determination. This Court issued an order on October 16, 2015, inter alia, remanding the case to Appeals for further development of certain arguments P raised. After a supplemental CDP hearing, Appeals once again sustained the levy notice. P then filed a motion for summary judgment asserting that the IRS failed to comply with I.R.C. sec. 6751(b)(1) in determining the I.R.C. sec. 6707A penalty.

Held: The written supervisory approval requirement of I.R.C. sec. 6751(b)(1) applies to the assessable penalty imposed by I.R.C. sec. 6707A for failure to disclose reportable transaction information.

Held, further, the proposal of an assessable penalty under I.R.C. sec. 6707A in the 30-day letter to P embodied, as in Clay v. Commissioner, 152 T.C. 223, 249 (2019), an "initial determination" for purposes of I.R.C. sec. 6751(b)(1), which required written supervisory approval.

Held, further, Appeals abused its discretion by summarily determining that the IRS had met "any applicable law or administrative procedure" for purposes of I.R.C. sec. 6330(c)(1), since the IRS had failed to comply with I.R.C. sec. 6751(b)(1) because it obtained written supervisory approval for the I.R.C. sec. 6707A penalty only after the revenue agent issued to P the 30-day letter proposing to assert the penalty.

Allen James White and William J. Wise, for petitioner.

Elizabeth S. McBrearty, Angela B. Reynolds, Elizabeth A. Carlson, Jay D. Adams, and Mayer Y. Silber, for respondent.

OPINION

GUSTAFSON, Judge:  In this collection due process ("CDP") case, petitioner, Laidlaw's Harley Davidson Sales, Inc. ("LHDS"), seeks review pursuant to section 6330(d)(1)[1] of the determination by the Office of Appeals ("Appeals") of the Internal Revenue Service ("IRS") to sustain a notice of intent to levy.  For LHDS's tax year ending May 31, 2008, the IRS assessed a penalty under section 6707A(a) for failure to disclose on its Federal income tax return its participation in a reportable transaction.  LHDS has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that the section 6707A penalty assessment was invalid as a matter of law.  Respondent, the Commissioner of the IRS, has abated all but $10,000 of the penalty, and the remaining issue for decision is whether the IRS complied with the written supervisory approval requirement of section 6751(b)(1) with respect to its assessment of the penalty against LHDS.  We hold that the IRS did not comply with that approval requirement, and we will therefore grant LHDS's motion for summary judgment.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (26 U.S.C.; "the Code"), as amended and in effect for the relevant year, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The following facts are not in dispute.[2] See Rule 121(b). LHDS is a subchapter C corporation which maintained its principal place of business in California when the petition was filed.

### Sterling Benefit Plan

In October 2002 Ronald H. Snyder established the Sterling Benefit Plan as a way for employers to fund and receive greater benefits (primarily death, medical, and disability benefits) than pension plans allowed. The IRS eventually determined that the Sterling Benefit Plan is substantially similar to the transactions

---

[2]The facts in this Opinion are derived from the administrative record developed before Appeals and from the parties' stipulations. In Robinette v. Commissioner, 123 T.C. 85, 95 (2004), rev'd, 439 F.3d 455 (8th Cir. 2006), we held that "when reviewing for abuse of discretion under section 6330(d), we are not limited by the Administrative Procedure Act * * * and our review is not limited to the administrative record." The Court of Appeals for the Ninth Circuit has concluded that the record rule applies to CDP cases before this Court. See Keller v. Commissioner, 568 F.3d 710, 718 (9th Cir. 2009), aff'g in part T.C. Memo. 2006-166, and aff'g in part, rev'g in part decisions in related cases. Under section 7482(b)(1)(B), appeal in this case would evidently lie in the Court of Appeals for the Ninth Circuit, and in this case we therefore follow that court's opinion. See Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971). However, the parties have stipulated as to assertions that "may be accepted as facts and all exhibits referred to herein and attached hereto may be accepted as authentic", and neither party has objected to reliance on the stipulations. To the extent, if any, that the stipulated facts and exhibits exceed the administrative record, we conclude that the parties have waived any objection on that ground.

identified as "listed transactions" in Notice 2007-83, 2007-2 C.B. 960, and that a taxpayer using the Sterling Benefit Plan is therefore subject to the penalty of section 6707A if it does not adequately disclose that participation on its tax return. See generally Our Country Home Enters., Inc. v. Commissioner, 145 T.C. 1 (2015).

LHDS's 2008 income tax return

LHDS participated in the Sterling Benefit Plan. LHDS timely filed a Form 1120, "U.S. Corporation Income Tax Return", for the tax year ending May 31, 2008. That return did not initially include a Form 8886, "Reportable Transaction Disclosure Statement", reporting its participation in the Sterling Benefit Plan. However, the IRS subsequently received from LHDS in December 2010 various Forms 8886 amending its corporate returns for multiple years, including the May 2008 tax year.

In the Form 8886 amending its May 2008 return, LHDS disclosed its participation in the Sterling Benefit Plan. LHDS indicated in the Form 8886 that the Sterling Benefit Plan was a "listed" transaction by checking the appropriate box provided on the form for identification of the type of reportable transaction being disclosed. LHDS further designated Notice 2007-83, supra, as the published IRS guidance relating to that classification.

Proposal of the section 6707A penalty in the 30-day letter

Revenue Agent ("RA") Sandra Czora was the IRS employee assigned to examine LHDS's return for potential liability for a penalty under section 6707A because of the failure to include reportable transaction information with its original return.  The parties have stipulated that she was the individual who "made the initial determination", for purposes of section 6751(b)(1), "to assert the I.R.C. § 6707A penalty" against LHDS for that year.

RA Czora first notified LHDS of the proposed section 6707A penalty by issuing a so-called "30-day letter", dated May 26, 2011, proposing to assert that penalty and providing LHDS with a 30-day period within which to respond.  This 30-day letter contained the prefatory heading "Why We Are Sending You This Letter", beneath which the following explanation appeared:

> We are notifying you of a proposed penalty under Internal Revenue Code (IRC) section 6707A.  The section 6707A penalty is proposed for your failure to disclose a reportable transaction as required by IRC section 6011 and associated regulations and/or for failing to disclose in a periodic report required under section 13 or 15(d) of the Securities Exchange Act of 1934 any penalty described in IRC section 6707A(e)(2) that you were required to pay.  The paragraph below describes the possible grounds for proposing this penalty. Please review this proposed assessment and let us know whether or not you agree by following the directions provided in this letter.

The letter further specified that the proposed section 6707A penalty related to LHDS's involvement in the Sterling Benefit Plan, and it outlined LHDS's options depending upon whether it agreed with the penalty proposal.

The 30-day letter explained that, in the event that LHDS wished to oppose the section 6707A penalty, it was entitled to request a conference with Appeals. The letter emphasized that if LHDS opted instead to take no action in response to the penalty proposal, the IRS would "assess the penalty and begin collection procedures."  It further cautioned that "[i]f you fail to seek Appeals consideration of your case or fail to waive in writing such consideration or allow the 30-day response time to lapse without contact, the Commissioner will not consider a request to rescind the penalty."

Enclosed with the 30-day letter was a pair of documents constituting what is commonly called a "revenue agent's report" or "RAR":[3]  a Form 4549-A, "Income Tax Discrepancy Adjustments", along with a Form 886-A, "Explanation of Items",

---

[3]See Branerton Corp. v. Commissioner, 64 T.C. 191, 194-195 (1975) (explaining that a revenue agent's report is a "report indicating the adjustments to income as reported on the return and the nature of the adjustments he proposes to make").

justifying the proposed imposition of the section 6707A penalty.[4]  Also attached was a document briefly detailing RA Czora's calculation of the proposed penalty.

The 30-day letter and its attachments were signed only by RA Czora and not by any supervisor.

LHDS responded to the 30-day letter by submitting a written protest to the IRS on July 21, 2011, requesting a conference with Appeals in order to dispute RA Czora's proposed assertion of the section 6707A penalty.[5]

Written supervisory approval

On August 23, 2011--more than a month after the submission of LHDS's written protest, and nearly three months after the date stamped on the 30-day letter--Group Manager ("GM") Virginia Korzec, RA Czora's immediate supervisor, approved RA Czora's assertion of the section 6707A penalty.  To reflect this approval, GM Korzec signed a Form 300, "Civil Penalty Approval

---

[4]The 30-day letter likewise purported to enclose Form 870, "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment"; Publication 1, "Your Rights as a Taxpayer"; Publication 5, "Your Appeal Rights and How To Prepare a Protest If You Don't Agree"; and Publication 594, "What You Should Know About the IRS Collection Process". These documents, however, are absent from the record.

[5]While the specified 30-day period ended on June 27, 2011, LHDS's written protest to Appeals indicated that LHDS had requested an extension of time to file its protest until July 21, 2011.  The Commissioner does not dispute this contention.

Form", as well as a Form 8278, "Assessment and Abatement of Miscellaneous Civil Penalties", which RA Czora had prepared with respect to the section 6707A penalty. The following day, GM Korzec approved the transfer of LHDS's case to Appeals.

The section 6707A penalty hearing

Appeals Officer ("AO") Roger Olson handled LHDS's penalty hearing. He reviewed RA Czora's report, the 30-day letter, and LHDS's written protest and supporting documentation; held a telephone conference with LHDS; and had follow-up telephone discussions with LHDS on four separate occasions. On August 21, 2013, roughly two years after the case had been transferred to Appeals, AO Olson closed the case and recommended assessment of the section 6707A penalty. The IRS acted on that recommendation a few weeks later, assessing the penalty against LHDS on September 16, 2013.

The CDP hearing and the Tax Court petition

In an effort to collect the section 6707A penalty, the IRS sent LHDS a Letter 1058, "Final Notice of Intent to Levy and Notice of Your Right to a Hearing", on November 21, 2013. LHDS responded by timely submitting to the IRS a Form 12153, "Request for a Collection Due Process or Equivalent Hearing". The Form 12153 reflected that LHDS did not intend to pursue collection

alternatives but instead sought to challenge various aspects of how the penalty hearing before AO Olson was conducted.[6]

On April 10, 2014, AO Florence Barba sent LHDS a letter scheduling the CDP hearing and requesting supporting documentation to allow her to evaluate potential collection alternatives. AO Barba's letter also stated that LHDS had had a prior opportunity, during the penalty hearing before AO Olson, to challenge the merits of its liability for the section 6707A penalty; and the letter warned that, absent evidence to the contrary, LHDS would therefore not be permitted to challenge its underlying liability during the CDP hearing.

AO Barba conducted LHDS's CDP hearing by telephone on May 9, 2014. During the hearing LHDS indicated that it remained uninterested in collection alternatives and instead attempted to dispute its underlying liability for the section 6707A penalty. Thereafter, on May 21, 2014, AO Barba issued a notice of determination sustaining the levy notice. The notice of determination included a statement that AO Barba had verified IRS compliance with the requirements of any applicable law, regulation, or administrative procedure with respect to the

---

[6]LHDS contended, for instance, that the section 6707A penalty had been assessed before LHDS had a chance to challenge the classification of the Sterling Benefit Plan as a listed transaction, that the penalty hearing had been closed prematurely, and that it had violated LHDS's due process rights under the U.S. Constitution.

penalty assessment and the levy notice. That verification statement, however, did not specifically address IRS compliance with section 6751(b)(1).

On June 23, 2014, LHDS timely filed a petition with this Court challenging the notice of determination.

Remand and stipulation

We issued an order on October 16, 2015, granting partial summary judgment to the Commissioner on the issue of LHDS's ineligibility to challenge its underlying liability during these proceedings and remanding the case to Appeals in order to further explore certain statute of limitations and penalty rescission arguments raised by LHDS. That remand culminated in the issuance of a supplemental notice of determination by AO Nathan August on February 23, 2016, once again sustaining the levy notice. The supplemental notice specifically determined that "[t]he IRC 6707A civil penalty was validly assessed in accordance with IRC 6751(b)(1)."

The parties subsequently executed a stipulation of settled issues, reflecting the IRS's agreement to abate all but $10,000 of the section 6707A penalty, and we permitted LHDS to file a second amended petition. In that filing LHDS alleges that Appeals erred by failing to determine that the section 6707A penalty

assessment in this case was invalid because the IRS had not complied with the written supervisory approval requirement of section 6751(b)(1).

Motion for summary judgment

LHDS has now moved for summary judgment, contending that the only remaining question in this case is whether the IRS satisfied the written supervisory approval requirement of section 6751(b)(1). And on that score, LHDS argues, the section 6707A penalty assessment was invalid as a matter of law because RA Czora failed to secure GM Korzec's written approval before issuing to LHDS the 30-day letter proposing the penalty.[7]

The Commissioner argues that the plain language of section 6751(b)(1), as applied to section 6707A penalties (or, for that matter, to any of the other so-called "assessable penalties" found in chapter 68, subchapter B of the Code), demands only that written supervisory approval of an assessable penalty occur before the IRS's assessment of the penalty--a standard with which the IRS complied in this case.

_____

[7]LHDS likewise argues in the alternative that GM Korzec's approval was in any event inadequate because RA Czora's computation of the penalty was not attached to the Civil Penalty Approval Form that GM Korzec signed. Because we hold below that the written supervisory approval in this case was untimely, we need not address this secondary argument.

## Discussion

I.      General legal principles

A.      Summary judgment standard

The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).

This case presents a question of law with respect to the timing aspect of the section 6751(b)(1) written supervisory approval requirement, and the parties agree upon the pertinent facts undergirding that question. We therefore conclude that there are no genuine disputes as to any material fact, see Rule 121(b), and that this section 6751(b)(1) issue is appropriate for summary adjudication.

B.      Standard of Review

In a CDP case the Tax Court reviews for abuse of discretion the determinations by Appeals that do not involve the underlying liability.[8] Craig v.

---

[8]Where a challenge to the underlying tax liability is properly at issue, the Court reviews Appeals' liability determination de novo, Goza v. Commissioner, 114 T.C. 176, 181-182 (2000); but in our order of October 16, 2015, we held that LHDS is precluded from challenging its underlying liability for the section 6707A penalty in this proceeding because under section 6330(c)(2)(B), a taxpayer is permitted only one opportunity to dispute its liability before Appeals--in this case,

(continued...)

Commissioner, 119 T.C. 252, 260 (2002). Abuse of discretion occurs when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). We have explained that where a determination by Appeals is predicated upon an error of law, that determination constitutes an abuse of discretion. See Alessio Azzari, Inc. v. Commissioner, 136 T.C. 178, 191 (2011); Swanson v. Commissioner, 121 T.C. 111, 119 (2003); see also Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1091 (9th Cir. 2010) ("an error of law is an abuse of discretion").

C.    CDP principles

If a taxpayer fails to pay any Federal tax liability after notice and demand, section 6331(a) authorizes the IRS to collect the tax by levy on the taxpayer's property. And as relevant here, section 6671 provides that the so-called "assessable penalties" imposed under subchapter B of chapter 68--including the

---

[8](...continued)
LHDS's penalty hearing before AO Olson. See Bitter v. Commissioner, T.C. Memo. 2017-46, at *12 (holding that a taxpayer's conference with Appeals to protest the assertion of a section 6707A penalty was a prior opportunity which barred the taxpayer from later contesting his underlying liability during a subsequent CDP hearing). However, as we explain below in part I.C, compliance with section 6751(a)(1) is an issue of "verification" under section 6330(c)(1), which may always be raised in a CDP case.

section 6707A penalty here at issue--"shall be assessed and collected in the same manner as taxes." However, the IRS must first issue a notice of intent to levy and notify the taxpayer of the right to an administrative hearing before Appeals. Sec. 6330(a) and (b)(1). After receiving such a notice, the taxpayer may request an administrative hearing before Appeals. Sec. 6330(a)(3)(B), (b)(1).

At the CDP hearing, the task of the Appeals officer is to determine whether the proposed collection action may proceed. And that role requires the Appeals officer to take into consideration several things:

First, the Appeals officer must obtain from the Secretary verification that the requirements of any applicable law and administrative procedure have been met by IRS personnel. See sec. 6330(c)(1), (3)(A). With respect to this verification requirement, we have said that "[w]here the supervisory approval requirement of section 6751(b)(1) applies, the Appeals officer should obtain verification that such approval was obtained". ATL & Sons Holdings, Inc. v. Commissioner, 152 T.C. 138, 144 (2019); see Rosendale v. Commissioner, T.C. Memo. 2018-99, at *14. The supplemental notice of determination issued by Appeals reflects its verification that the section 6707A penalty in this case was "validly assessed in accordance with IRC 6751(b)(1)."

Second, under section 6330(c)(3), the Appeals officer must consider "any relevant issue relating to the unpaid tax or the proposed levy", sec. 6330(c)(2)(A), including any "collection alternatives" proposed by the taxpayer, sec. 6330(c)(2)(A)(iii). LHDS did not pursue any collection alternative during the CDP hearing; and the "relevant issue[s]" that it raised at the hearing either have been resolved by motion or stipulation or are mooted by our holding below that the IRS failed to comply with section 6751(b)(1).

And third, the Appeals officer must determine "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." Sec. 6330(c)(3)(C). LHDS has not raised this balancing issue, and consequently we do not address it. See ATL & Sons Holdings, Inc. v. Commissioner, 152 T.C. at 145.

D.    Written supervisory approval under section 6751(b)(1)

Section 6751(b)(1) provides: "No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate." When Congress enacted section 6751(b)(1), it did so with the purpose of helping to ensure "that

penalties [w]ould only be imposed where appropriate and not as a bargaining chip." Chai v. Commissioner, 851 F.3d 190, 219 (2d Cir. 2017) (quoting S. Rept. No. 105-174, at 65 (1998), 1998-3 C.B. 537, 601), aff'g in part, rev'g in part T.C. Memo. 2015-42; Clay v. Commissioner, 152 T.C. 223, 248 (2019); accord Roth v. Commissioner, 922 F.3d 1126, 1132-1133 (10th Cir. 2019), aff'g T.C. Memo. 2017-248.

The IRS's compliance with section 6751(b)(1) is appropriately considered in a deficiency case, see Graev v. Commissioner (Graev III), 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016); in a TEFRA partnership case premised on a final partnership administrative adjustment ("FPAA"), see Palmolive Bldg. Inv'rs, LLC v. Commissioner, 152 T.C. 75, 82-86 (2019); and in a CDP case, such as this one, see ATL & Sons Holdings, Inc. v. Commissioner, 152 T.C. at 148-154. If, in the course of that consideration, we conclude that the IRS has failed to secure written supervisory approval for a penalty subject to section 6751(b)(1), then we cannot sustain the penalty. See Graev III, 149 T.C. at 493.

The record in this case contains a Civil Penalty Approval Form signed by RA Czora's immediate supervisor with respect to the section 6707A penalty at

issue. The question for decision is whether the timing of that approval failed to comply with section 6751(b)(1).

II.     Analysis

A.     Section 6751(b)(1) and the assessable penalty of section 6707A

As we stated in Graev III, 149 T.C. at 495 n.17:

By its terms sec. 6751(b) applies to the assessment of all penalties under "this title"--i.e., title 26, the Internal Revenue Code. This encompasses not only penalties subject to deficiency procedures but a great many so-called assessable penalties in subch. B of ch. 68, secs. 6671 through 6725, which are generally not subject to deficiency procedures. [Emphasis altered.]

Assessable penalties were not at issue in Graev III; and after that case we decided several others that did involve one of the assessable penalties, but we did so without reaching the question whether section 6751(b)(1) applied.[9] Since then, however, we have held that the requirement applies to the assessable failure-to-file

_____

[9]In multiple cases involving the assessable trust fund recovery penalty under section 6672, we found that written supervisory approval had been obtained, so the cases did not turn on the question whether section 6751(b)(1) applied to those penalties. See Blackburn v. Commissioner, 150 T.C. 218, 224 (2018); Humiston v. Commissioner, T.C. Memo. 2019-9, at *6; Bletsas v. Commissioner, T.C. Memo. 2018-128, at *15-*16, aff'd, 784 F. App'x 835 (2d Cir. 2019); Kane v. Commissioner, T.C. Memo. 2018-122, at *10-*11; Rosendale v. Commissioner, T.C. Memo. 2018-99, at *14-*15; Gallagher v. Commissioner, T.C. Memo. 2018-77, at *13.

- 19 -

penalty of section 6699,[10] to the assessable penalty of section 6701 for aiding and abetting understatement of tax liability,[11] and to the assessable penalty of section 6702(a)(1) for filing a frivolous return.[12] Today we reach the question whether the supervisory approval requirement of section 6751(b)(1) applies to the assessable penalty of section 6707A, and the answer is yes.

The penalty for failure to report a "reportable transaction" is repeatedly identified as a "penalty" in the title and text of section 6707A. That provision is plainly--in the language of section 6751(b)(1)--"under this title" (i.e., under

---

[10]In <u>ATL & Sons Holdings, Inc. v. Commissioner</u>, 152 T.C. 138, 154 (2019), we held that section 6751(b)(1) was potentially applicable but did not apply to the section 6699 penalty at issue in that case because it had been "automatically calculated through electronic means" and was therefore excepted from the written supervisory approval requirement under section 6751(b)(2)(B).

[11]See <u>Kapp v. Commissioner</u>, T.C. Memo. 2019-84, at *94 ("For penalties under section 6701, respondent's burden of production includes the burden of producing evidence establishing that the penalties were 'personally approved (in writing) by the immediate supervisor of the individual making such determination' as required by section 6751(b)").

[12]In <u>Kestin v. Commissioner</u>, 152 T.C. __, __ (slip op. at 14) (Aug. 29, 2019), we held: "As to penalties (such as the section 6702(a) penalties at issue here), the Commissioner has the 'burden of production' pursuant to section 7491(c)". Section 7491(c) imposes that burden of production "with respect to the liability <u>of any individual</u> for any penalty" (emphasis added), whereas LHDS is a corporation as to which that section does not apply. Nonetheless, as we noted above in part I.C, the verification requirement of section 6330(c)(1) does apply here, and Appeals was required to verify compliance with the supervisory approval requirement of section 6751(b)(1).

title 26 of the United States Code). Section 6751(b)(2) does provide for two exceptions, but neither applies here. First, written supervisory approval is not required for "any addition to tax under section 6651, 6654, or 6655", sec. 6751(b)(2)(A), but this set does not include section 6707A. Second, written supervisory approval is not required for "any other penalty automatically calculated through electronic means", sec. 6751(b)(2)(B), but the Commissioner does not argue that section 6707A constitutes a penalty "automatically calculated through electronic means." Nor could he so contend. The parties have stipulated that RA Czora--not a computer--"made the initial determination to assert the I.R.C. § 6707A penalty against petitioner", so this was not an instance in which "the penalty was determined mathematically by a computer software program without the involvement of a human IRS examiner". See Walquist v. Commissioner, 152 T.C. 61, 70 (2019). Accordingly, we conclude that the written supervisory approval requirement of section 6751(b)(1) applies to the assessable section 6707A penalty.

B.     Timing of written supervisory approval for assessable penalties

We arrive now at the crux of this case: whether the written supervisory approval of the disputed section 6707A penalty came too late. On this point, the Commissioner argues that under section 6751(b)(1), the IRS is required only to

secure supervisory approval for assessable penalties before the time of assessment. LHDS, by contrast, urges that approval must precede the first proposal of the penalty by the IRS to the taxpayer.

Our recent Opinion in Clay v. Commissioner, 152 T.C. at 249, held that when it is "communicated to the taxpayer formally * * * that penalties will be proposed", section 6751(b)(1) is implicated. We concluded that the issuance of an RAR and a 30-day letter embodied an "initial determination" for purposes of section 6751(b)(1), and we held that the IRS had not complied with that provision because it did not have penalty approval in hand before formally communicating the determination of those penalties to the taxpayers for the first time in the 30-day letter. Id. at 249-250.

Though Clay was a deficiency case, we did not intimate that our holding was limited to the deficiency context. On the contrary, in view of our previous Opinions in ATL & Sons Holdings, Inc. v. Commissioner, 152 T.C. at 148-154 (applying section 6751(b)(1) in a CDP case), and Palmolive Bldg. Inv'rs, LLC v. Commissioner, 152 T.C. at 82-86 (applying section 6751(b)(1) in a TEFRA partnership case), the reasoning of Clay applies with equal force in non-deficiency cases, including those involving assessable penalties. Accordingly, we now hold that in the case of the assessable penalty of section 6707A here at issue, section

6751(b)(1) requires the IRS to obtain written supervisory approval before it formally communicates to the taxpayer its determination that the taxpayer is liable for the penalty.

Here the parties agree that RA Czora was the IRS employee who made the initial determination to assess the section 6707A penalty against LHDS. And they have stipulated that the 30-day letter "reflected" that initial determination. Accordingly, we hold that, consistent with Clay, the 30-day letter with the RAR embodied the initial determination of the section 6707A penalty for purposes of section 6751(b)(1). Written supervisory approval of that initial determination was therefore required before the issuance of that letter to LHDS.

The record demonstrates that the 30-day letter, dated May 26, 2011, embodied the initial determination--i.e., the first formal communication by the IRS of the conclusion--that the section 6707A penalty applied to LHDS. Written supervisory approval, however, did not occur until almost three months later, when GM Korzec signed the Civil Penalty Approval Form on August 23, 2011. Consequently, we hold that Appeals abused its discretion by summarily determining that the IRS had complied with "any applicable law or administrative procedure" for purposes of section 6330(c)(1) since in fact the IRS had failed to

comply with section 6751(b)(1). It was an abuse of discretion for AO Barba and AO August to purport to verify otherwise.

### C. The Commissioner's contentions

The Commissioner maintains that the written supervisory approval in this case was timely because it preceded the IRS's assessment of the section 6707A penalty. In support of this view, he first cites Chai v. Commissioner, 851 F.3d at 218, for the proposition that section 6751(b)(1) does not expressly require written supervisory approval any earlier than before the act of assessment. He further contends that under Chai, all that matters for written supervisory approval is that approval be obtained when the IRS supervisor still retains the discretion to give or withhold that approval. Reasoning that supervisory discretion with respect to assessable penalties is not interrupted by an intervening judicial proceeding before the act of assessment, he argues that any approval before their assessment is necessarily timely. Thus, the Commissioner concludes, because GM Korzec approved the section 6707A penalty in this case before it was assessed, the IRS complied with section 6751(b)(1). To the extent the Commissioner's theory is founded upon Chai, we think that theory must surely fail since Chai does not support it but rather contradicts it.

First, although the Court of Appeals for the Second Circuit did indeed observe in Chai that section 6751(b)(1) "contains no express requirement that the written approval be obtained at any particular time prior to assessment", Chai v. Commissioner, 851 F.3d at 218, it went on to explain that the legislative history "strongly rebuts" the Commissioner's instant argument that "written approval may be accomplished at any time prior to, even if just before, assessment", id. at 219. Indeed, viewing the statute through the lens of that history, the Court of Appeals observed that section 6751(b)(1) "would make little sense" if it permitted approval of an "initial" penalty determination "up until and even contemporaneously with the IRS's final determination." Id. at 221. Nothing about this rationale suggests that assessable penalties require divergent treatment. Chai's reasoning thus contradicts the Commissioner's argument.

Second, the Commissioner's argument distorts the holding in Chai about the significance of the supervisor's authority. It is true, as the Commissioner urges, that the Court of Appeals commented that "[i]f supervisory approval is to be required at all, it must be the case that the approval is obtained when the supervisor has the discretion to give or withhold it", see id. at 220; and in a case such as Chai in which the penalty is initially determined in a notice of deficiency, section 6751(b)(1) "requires written approval of the initial penalty determination

no later than the date the IRS issues the notice of deficiency", id. at 221. However, the Court of Appeals did not hold that, in the deficiency context, supervisory approval always necessarily satisfies section 6751(b)(1) if that approval is obtained right before the notice of deficiency is issued. Rather, Chai noted the truism that supervisory approval must be obtained when the supervisor has authority to give it--and not later, when he has no such authority. In the deficiency context a supervisor in the IRS's examination function loses authority when the notice of deficiency is issued. In this respect the Court of Appeals followed the reasoning of the dissent in Graev v. Commissioner, 147 T.C. at 508 (Gustafson, J., dissenting), which stated that an IRS "examination supervisor has authority to approve a penalty determination only when the case is under the authority of the IRS's examination function."

If the "initial determination" is first formally communicated in a notice of deficiency, then supervisory approval is timely if made right before the issuance of that notice. However, if the initial determination of penalty liability is made and formally communicated before the notice of deficiency, and if that liability is ultimately included in the notice of deficiency, then supervisory approval right before issuance of the notice of deficiency may be too late--not because the supervisor lacks authority over the case, but because at that point he is approving

not the "initial determination" but something more like a final determination. Supervisory approval of a penalty in a deficiency case must be obtained "no later than" when the notice of deficiency is issued, but sometimes--as in Clay and in this case--it must be obtained earlier.

We do not read Chai to suggest that the timeliness of written supervisory approval under section 6751(b)(1) hinges only upon the supervisor's authority to make decisions in the case and that any approval given when the supervisor has authority over the case must necessarily be timely. To so suggest would be to ignore the paramount role that the legislative history of section 6751(b)(1) played in Chai's analysis. The lesson of that history, the Court of Appeals explained, was that Congress believed "that penalties should only be imposed where appropriate and not as a bargaining chip", and so Congress responded by enacting section 6751(b)(1) to curb perceived abuses arising out of the IRS's use of unjustified penalties to pressure taxpayers into settlement. Chai v. Commissioner, 851 F.3d at 219. Under the Commissioner's reading, by contrast, this congressional purpose of preventing "bargaining" by an aggressive agent is wholly eclipsed by consideration of the IRS supervisor's discretion. This interpretation plainly contradicts the congressional purpose behind the enactment of section 6751(b)(1) that informed the Court of Appeals' decision in Chai.

We accordingly reject the Commissioner's argument that the IRS is free to obtain written supervisory approval for assessable penalties at virtually any time before assessment.

III.  Conclusion

The IRS failed to comply with section 6751(b)(1) in this case because it did not obtain written supervisory approval for the section 6707A penalty before the first formal communication to LHDS of the determination to assess that penalty.  It was an abuse of discretion for AO Barba and AO August to conclude otherwise. Accordingly, we will not sustain the proposed levy, and we will grant LHDS's motion for summary judgment.

To reflect the foregoing,

An appropriate order and

decision will be entered.